# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ARKANSAS,

## AT THE DECEMBER TERM, A. D. 1861.

---

### JONES vs. McLAIN.

The land of a resident tax-payer not being subject to sale for non-payment of taxes, if sufficient personal property can be found by the collector whereon to make distress for the taxes, the recital in the collector's deed to the purchaser of a resident's land sold for non-payment of taxes, that the tax-payer failed to pay on demand, and "not knowing of any personal property" whereon to levy, he proceeded to levy on, and advertise the land for sale, is not a direct and satisfactory mode of reciting that sufficient personal property of the delinquent could not be found. But, in this case, if the recital is sufficient to put upon the tax-payer the burthen of proving that he had sufficient personal property, that fact is fully proved, and the decree canceling the tax deed affirmed.

*Appeal from Pulaski Chancery Court.*

Hon. H. F. FAIRCHILD, Chancellor.

GARLAND & RANDOLPH, for appellant.

The court cannot consider the testimony of Giles and Stillwell as of any effect. They were the deputies of the sheriff, and it is attempted to contradict the deed of the sheriff by their testimony. It seems that the testimony of the sheriff is not competent for this purpose. *Biscoe et al. vs. Coulter et al.*, 18 *Ark*. 423. And if the sheriff is not a competent witness to contradict the recitals of his deed, the same principle would exclude the deputy, when he has performed the official act.

The recital in the collector's deed is just as certain as if the sheriff had said, "and not being able to find any personal property," etc. The sheriff was required to diligently endeavor and use all lawful means to collect the taxes of McLain (*sec.* 61, *chap*. 148, *Gould's Dig*.), and, in case of his failure to pay them, was required to levy upon his personal property, if he could find any liable to be taken, and, if he could not find any, then to levy on and sell his lands (*sec*. 107, *Ib*.) Every officer is entitled to the benefit of the presumption that he has performed his duty, and it must be inferred for the collector's deed that after exhausting all the means in his power, of acquiring a knowledge, the sheriff did not know of any personal property of McLain: it cannot be inferred that he made no effort to acquire a knowledge of McLain's personal property. We contend that the recital contains a literal and substantial statement of all the facts necessary to authorize a sale of the land by the sheriff. The mere fact of a party having personal property, cannot avoid a sale of his real estate for non-payment of taxes. Such a doctrine would destroy public confidence in the validity of the sales of residents' lands. So, proof that McLain had personal property would not avoid the sale, unless it was also in proof that the property was in the county, at the time of the demand of payment, and that the sheriff was aware of the fact.

GALLAGHER and KNIGHT, for the appellee.

The deed was only evidence of the legality and regularity

of the sale until the contrary be made to appear, (*Eng. Dig.*, *p.* 885, *sec.* 92,) and the contrary was made to appear by good and sufficient showing, that the sale was illegal and irregular. Furthermore, the deed itself evidenced the illegality and irregularity of the sale, by showing that the lands were sold because the officer did not know of any personal property of appellee, out of which to make the taxes, instead of showing that no such property could be found. In this view, the sale and deed were void; and Jones acquired no title. *Moore vs. Brown,* 11 *How. U. S.* 425; *Merrick & Fenno vs. Hutt,* 15 *Ark.* 339; *Patrick vs. Davis, Ib.* 363.

The deed does not recite that no personal property of McLain could be found; and it is shown in evidence that he had abundance of personalty, out of which the taxes could have been made if the collector had performed the requirement of the statute.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

The lands in controversy were assessed by Danley, the sheriff and assessor of Pulaski county, for the year 1857, as the property of Allen McLain, sold for the taxes, etc., charged upon them, in April, 1858, and purchased by Alexander D. Jones, who obtained the collector's deed, and filed a bill for confirmation of his title.

In his answer to the bill McLain made one objection to the regularity of the sale, which the chancellor held to be sustained by the proof, and fatal to the tax title, and we think his decision, upon that point, was correct; and that other objections of minor importance, discussed by counsel, need not be noticed.

The collector in his deed recites that McLain failed to pay the taxes on demand, etc., " and *not knowing of any personal property of the said McLain,* and he wholly failing to show to the collector any personal property whereon to levy and make distress for the same," etc., the collector proceeded to levy upon and advertise the lands for sale, etc.

McLain was a resident of Pulaski county at the time of the assessment and sale, and had been for twenty years before.

Although the taxes constitute a lien upon the land of the resident, as well as upon the land of the non-resident tax-payer, yet the land of the delinquent resident is not subject to sale for the taxes charged upon it, " *if sufficient personal property belonging to him, liable to be taken, whereon to levy and make distress for the payment of such taxes, can be found. Gould's Dig., chap. 148, secs. 106, 107; Merrick & Fenno vs. Hutt,* 15 *Ark.* 340; *Kinsworthy et al. vs. Mitchell & wife,* 21 *Ark.* 154.

The recital in the deed of the collector—" *not knowing of any personal property,* etc.,—is not a direct and satisfactory mode of reciting that sufficient personal property of the delinquent could not be found, but for the purposes of this case, the recital in the deed may be treated as sufficient to put upon McLain the burthen of proving that he had, at the time the lands were levied upon, a sufficient amount of personal property, liable to be taken by the collector, and within his reach upon such reasonable diligence as the law imposes upon him, to satisfy the taxes charged upon the lands, as the answer of McLain, in effect, alleges.

The taxes assessed upon the lands for the year 1857, amounted to $26 62.

For the same year, and it appears in the same list with his lands, McLain gave in for assessment, ten head of horses and mares, over two years old, valued at $500; and one hundred head of neat cattle, over two years old, valued at $800. This personal property stood assessed to him, upon the tax book in the hands of the collector, at the time the lands were levied on and sold.

J. D. LITTLE testified, in substance, as follows: I am well acquainted with Allen McLain, and have known him since 1849. He was then, and still is, a citizen of Pulaski county. He is the owner of about one hundred head of cattle, and claims about twenty head of horses, and fifty head of hogs. The cat-

tle are worth $7 per head, or $700, and the horses $50 a head. I have lived in two miles of him since the fall of 1852. Since that time he has had the amount of property stated above, etc.

ELIAS CORE testified that he lived about a mile from McLain, and had known him for twenty-five years. That he owned personal property to the amount of some three or four thousand dollars: and was the owner of that much personal property in the first of the year 1858, etc.

GEORGE W. HARDY, testified: I have known Allen McLain ever since 1853. He has resided in Pulaski county since that time. I have been frequently at his house, and from what I saw, am warranted in the belief that he was worth from $1,500 to $2,000 of personal property, at any time since I have known him, and in the year 1858, etc.

Other witnesses corroborate the above, to the extent that McLain was the owner of personal property consisting of horses, cattle, hogs, etc., of value far exceeding the amount of taxes charged upon his lands for the year 1857.

The argument of counsel, that the witnesses do not state that the personal property referred to by them, was in Pulaski county, and within the reach of the collector, is not entitled to very grave consideration.

When the witnesses state that they had known McLain for many years, that he resided in Pulaski county, that they lived near him, had frequently been at his house, and that he had so many horses, cattle, hogs, etc., the inference is very plain that they meant that the property referred to by them was in his possession, and at his place of residence.

Nor is there any testimony conducing to prove that the horses, etc., of McLain were running in the range, as supposed by counsel, and not to be found by the collector, and that on that account he resorted to a sale of the lands, etc.

On the contrary, Josiah M. Giles, one of the deputies of the collector, testifies that he was the only deputy that collected the taxes of 1857, in Campbell township, where McLain re-

sided. That he made no effort to obtain from him personal property in satisfaction of his taxes, nor did Danley, or any of his deputies do so within the knowledge of witness. That from his knowledge of McLain's condition, he thought he was able, and had plenty of personal property to pay his taxes. He generally gave in a good many horses and cattle in his assessment list. Witness was at his house once during collecting time, to serve writs, but had no recollection of calling on him for his taxes.

The truth of the whole matter, as it appears from the depositions, is, that McLain deposited money with Hutt, his merchant, and instructed him to pay his State and county taxes, but not to pay his road tax. The deputy of the collector called on Hutt for payment, and he tendered the amount of the State and county taxes, but refused to pay the road tax. as directed by McLain; and the deputy declined to receive any portion of the taxes, unless the whole, including the road tax, was paid. Whereupon, the collector proceeded to advertise and sell the lands assessed in the name of McLain, without going to his residence, or sending a deputy, to levy upon personal property, or to see if any could be found.

We think, upon the pleadings and evidence, the decree of the Chancellor dismissing the bill, and canceling the tax deed of appellant, was right, and the decree must be affirmed.

Mr. Justice FAIRCHILD did not sit in this case.